*114 OPINION.
Smith:
The single question is whether 80 percent or more of petitioner’s gross income for the year 1937 consisted of royalties within the meaning of section 351 of the Revenue Act of 1936, as amended by section 353 (a) of the Revenue Act of 1937. If such was the case the petitioner concedes that it was a personal holding company in that year. It is not disputed that $4,245.03 of petitioner’s gross income was personal holding company income within the meaning of the statute. If more than $10,236.03 of the amounts received under the license agreements was compensation for services and not “royalties”, the petitioner’s contention must be sustained, since in that event more than 20 percent of the petitioner’s gross income was not personal holding company income within the .meaning of the statute.
The respondent contends that the amounts received under the license agreements were royalties in their entirety and that we can not determine that such amounts were in part consideration for services rendered. The petitioner argues that it is not bound by the contractual designation of the payments as “royalties”, nor by the fact that the payments were based on a percentage of net selling price, and that the evidence clearly shows that more than the required portion of such payments was compensation for services. In the alternative, the petitioner argues that if the payments were “royalties” they were “overriding royalties” and for that reason are not royalties within the meaning of the statute.
The evidence clearly provides a basis for the allocation of the aggregate amount received by petitioner from the licensees to compensation for services and to royalties. At the time the contracts were executed it was understood and agreed by the parties that substantial services were to be rendered by the petitioner and the payments provided for in the contracts were accordingly fixed at a much higher percentage of net selling price than would have been the case had the payments been for the use and manufacture of the patented *115 joint alone. The parties found, it impossible to draft a contractual provision which would clearly outline the respective rights and duties with regard to engineering services. For that reason alone no express provision for such services was made in the agreements. The licensees were protected in their right to the services of the petitioner by the fact that the agreements were subj'ect to cancellation at their option and by the further fact that since the payments were based upon percentages of net selling price it was to the petitioner’s self-interest to furnish the services which might enlarge the market for the product. The evidence overwhelmingly shows that more than one-half of the total payments made under the license agreements during 1937 was compensation for the services of the petitioner as distinguished from compensation for the use and manufacture of the universal j’oint. Thus, the petitioner must prevail unless we are required as a matter of law to treat the payments as royalties in their entirety.
The designation of the payments as “royalties” in the agreements is obviously not conclusive. Such a label might be evidence that the payments were royalties if other facts did not show that they were not royalties as intended by the statute. Kiesau Petroleum Corporation, 42 B. T. A. 69.
In Anton Dolenz, 41 B. T. A. 1091, the taxpayer received payments under an agreement licensing a patented process. The license agreement termed the payments “royalties.” The Board held that in fact a part of the “royalties” was compensation for services rendered by the licensor to the licensee in accordance with a provision of the agreement which was as follows:
* * * “The licensor agrees to instruct representatives oí licensee, first to be designated in writing by the licensee, in the details of the operation of ‘the patent’ and to give such supervision to the manufacturing operations of the licensee, of its various products, as in his opinion may be necessary and that shall and will not conflict with his other activities including absences in Europe and/or from San Francisco and/or the State of California.”
This agreement by the taxpayer in the Dolenz case did not bind him to furnish the services, and amounts to no more than an indication on the face of the contract that such services might be rendered if the taxpayer considered them necessary. In the instant case there is nothing on the face of the contract to indicate the agreement between the parties with regard to petitioner’s services. The remaining question in the instant case is therefore whether we may look outside the contract itself to discover the true nature of the payments in question.
It is manifest that we may do so. It is well to note that the parol evidence rule is not and can not be invoked in this case. Macon, Dublin & Savannah, Railroad Co., 40 B. T. A. 1266. It is necessary *116 for us to define the word “royalties” in order that we may ascertain whether the petitioner used that word in a statutory sense. We have defined a royalty as a payment or interest reserved by an owner in return for permission to use the property loaned and usually payable in proportion to use. Lane-Wells Co., 43 B. T. A. 463; Kiesau Petroleum Corporation, supra. Upon examination of the facts in this case we have found that the payments made to the petitioner were only partially intended as compensation for the use of the patented joint. To the extent that the payments were compensation for services rendered and not compensation for the use and manufacture of the joint, they were not royalties as we have defined them and they were not royalties within the meaning of the statute.
Noteman v. Welch, 108 Fed. (2d) 206; Logan Coal & Timber Association, 42 B. T. A. 529, and Lane-Wells Co., supra, are cases relied upon by the respondent. They are distinguishable upon their facts. The questions involved in those cases were similar to the question in the instant case. However, it is apparent that in each of those cases the taxpayer failed to present evidence upon which the requested allocation of the payments in question could be made. In the instant case the petitioner has clearly proved that part of the payments made by each licensee was made in consideration of services rendered. The cited cases are not in point.
It is not necessary to consider the petitioner’s alternative contention.

Decision will be entered under Rule 50.